UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

THE UNTIED STATES FOR THE USE AND BENEFIT        Case # 07 civ. 3318
OF PLATINUM MECHANICAL, LLC,

                         Plaintiff,

         -against-

                                                 ANSWER
                                                 AFFIRMATIVE
                                                 DEFENSES
                                                    AND
                                                 AMENDED
UNITED STATES SURETY COMPANY,                    COUNTERCLAIM
US SPECIALTY INSURANCE COMPANY and

CFP GROUP, INC.                                  JUDGE BRIEANT
                                                 ECF CASE

                         Defendants.

CFP GROUP, INC.,

         -against-

UTICA MUTUAL INSURANCE COMPANY.

         Additional Defendant on the Counterclaim

------------------------------------------------------------------------X

Defendant, CFP GROUP, INC. ( "CFP" ), by its undersigned counsel, as and for its

amended answer to the Complaint, respectfully shows and alleges:

## NATURE OF THE ACTION

1. Denies the allegations contained in paragraph "1" of the complaint except admits the

execution of a certain purchase order and begs leave to refer to the contents thereof for its

true meaning and intent.

2. Denies the allegations contained in paragraph "2" of the complaint except admits the execution of a certain written instrument and begs leave to refer to the contents thereof for its true meaning and intent.

3.  Denies the allegations contained in paragraph "3" of the complaint.

4.  Denies the allegations contained in paragraph "4" of the complaint except admits that the use plaintiff commenced this action and begs leave to refer to the pleadings filed herein for their true meaning and intent.

JURISDICTION AND VENUE

5.  The allegations contained in  paragraph "5" are legal conclusion to which no response is necessary.

6.  Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "6" of the complaint.

7.  Denies the allegations contained in paragraph "7" of the complaint except admits that CFP is a corporation organized under the laws of the State of Maryland.

8. Denies the allegations contained in paragraph "8" of the complaint except admits that certain work was performed within the Southern District of New York.

9.  In response to the allegations contained in paragraph "9" of the complaint, which is a demand for trial by jury, no response is necessary.

PARTIES

10.  Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 10 of the complaint..

11.  Admits the allegations contained in paragraph "11" of the complaint.

12.  Admits the allegations contained in paragraph "12" of the complaint.

13. Admits the allegations contained in paragraph "13" of the complaint except denies the alleged location of its principal place of business.

## COUNT ONE

14. In response to the allegations repeated and realleged in paragraph "14" of the complaint, CFP repeats its answers to the said allegations as if set forth herein at length.

15. Denies the allegations contained in paragraph "15" of the complaint except admits that it entered into a certain written agreement with the United States of America and begs leave to refer to the contents of the said agreement for its true intent and meaning.

16. Denies the allegations contained in paragraph "16" of the complaint, except admits that it issued a certain written purchase order to Platinum and begs leave to refer to the contents of said agreement for its true meaning and intent.

17. Denies the allegations contained in paragraph "17" of the complaint except admits that the use plaintiff did perform, incorrectly, certain extra work.

18. Denies the allegations contained in paragraph "18" of the complaint.

19. Denies the allegations contained in paragraph "19" of the complaint.

20. Denies the allegations contained in paragraph "20" of the complaint.

21. Denies the allegations contained in paragraph "21" of the complaint.

## COUNT TWO

22. In response to the allegations repeated and realleged in paragraph "22" of the complaint, CFP repeats its answers to the said allegations as if set forth herein at length.

23. Denies the allegations contained in paragraph "23" of the complaint.

24. Denies the allegations contained in paragraph "24" of the complaint except admits that it has made payments to the use plaintiff in the sum of at least $ 940,056.40.

25. Denies the allegations contained in paragraph "25" of the complaint.

26. Denies the allegations contained in paragraph "26" of the complaint.

COUNT THREE

27. In response to the allegations repeated and realleged in paragraph "27" of the complaint, CFP repeats its answers to the said allegations as if set forth herein at length.

28. Denies the allegations contained in paragraph "28" of the complaint except admits that it entered into a certain written agreement with the United States of America and begs leave to refer to the terms and conditions of the said written agreement for its true meaning and intent.

29. Denies the allegations contained in paragraph "29" of the complaint except admits that the Surety Companies executed a certain written instrument and begs leave to refer to the terms and conditions of the said written agreement for its true meaning and intent.

30. Admits, upon information and belief, the allegations contained in paragraph "30" of the complaint.

31. Denies the allegations contained in paragraph "31" of the complaint, except admits that it issued a certain purchase order to the use plaintiff and begs leave to refer to the said purchase order for its true meaning and intent.

32. Denies the allegations contained in paragraph "32" of the complaint except admits that the use plaintiff did perform, incorrectly, certain extra work.

33. Denies the allegations contained in paragraph "33" of the complaint.

34. Denies the allegations contained in paragraph "34" of the complaint except admits that the use plaintiff did perform certain work as set forth in the purchase order between the parties and begs leave to refer to the contents of the said purchase order for its true meaning and intent.

35. Denies the allegations contained in paragraph "35" of the complaint.

36. Denies the allegations contained in paragraph "36" of the complaint.

37. Denies the allegations contained in paragraph "37" of the complaint except admits that the use plaintiff did perform certain work within the Southern District of New York.

COUNT FOUR

38. In response to the allegations repeated and realleged in paragraph "38" of the complaint, CFP repeats its answers to the said allegations as if set forth herein at length.

39. Denies the allegations contained in paragraph "39" of the complaint except admits that it entered into a certain written instrument with the United States of America and begs leave to refer to the terms and conditions of the said written agreement for its true meaning and intent.

40. Denies the allegations contained in paragraph "40" of the complaint except admits that the Surety Companies executed a certain written instrument and begs leave to refer to the terms and conditions of the said written agreement for its true meaning and intent.

41. Admits, upon information and belief, the allegations contained in paragraph "41" of the complaint.

42. Denies the allegations contained in paragraph "42" of the complaint, except admits that it issued a certain purchase order to the use plaintiff and begs leave to refer to the said purchase order for its true meaning and intent.

43. Denies the allegations contained in paragraph "43" of the complaint except admits that the use plaintiff did perform, incorrectly, certain extra work.

44. Denies the allegations contained in paragraph "44" of the complaint.

45. Denies the allegations contained in paragraph "45" of the complaint except admits that the use plaintiff did perform certain work as set forth in the purchase order between the parties and begs leave to refer to the contents of the said purchase order for its true meaning and intent.

46. Denies the allegations contained in paragraph "46" of the complaint .

47. Denies the allegations contained in paragraph "47" of the complaint.

48. Denies the allegations contained in paragraph "48" of the complaint except admits that the use plaintiff did perform certain work within the Southern District of New York

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

49. Platinum has failed to satisfy all of the conditions precedent necessary to establish entitlement to recovery pursuant to the terms of the subcontract and/or the subcontract performance bond.

SECOND AFFIRMATIVE DEFENSE

50. Platinum's claim is barred by its own breaches of the subcontract.

THIRD AFFIRMATIVE DEFENSE

51. On information and belief, Platinum's claims are barred, in whole or in part, by estoppel.

## FOURTH AFFIRMATIVE DEFENSE

52. On information and belief, Platinum's claims are barred, in whole or in part, by waiver.

## FIFTH AFFIRMATIVE DEFENSE

53. On information and belief, Platinum's claims are barred, in whole or in part, by laches.

## SIXTH AFFIRMATIVE DEFENSE

54. On information and belief, Platinum's claims are barred, in whole or in part, by the applicable statute of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

55. On information and belief, Platinum's claims are barred, in whole or in part, by its own negligence.

## EIGHTH AFFIRMATIVE DEFENSE

56. On information and belief, Platinum's claims are barred, in whole or in part, by accord and satisfaction.

## NINTH AFFIRMATIVE DEFENSE

57. On information and belief, Platinum's claims are barred, in whole or in part, by release.

## TENTH AFFIRMATIVE DEFENSE

58. Platinum's claims are barred by the doctrine of impairment of suretyship.

## ELEVENTH AFFIRMATIVE DEFENSE

59. CFP reserves the right to supplement its defenses as discovery reveals other potential defenses.

## TWELFTH AFFIRMATIVE DEFENSE

60. The Complaint fails to state a claim upon which relief may be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE

61. Because Platinum is the party in material breach of the agreement, it cannot sue for breach of contract.

## FOURTEENTH AFFIRMATIVE DEFENSE

62. Platinum's claims are barred on account of its failure to mitigate its damages.

## AMENDED COUNTERCLAIM

For its Amended Counterclaim against Use Plaintiff ,Platinum Mechanical Contractors ("Platinum") and Utica Mutual Insurance Company ("Utica") CFP alleges as follows:

1. CFP is a corporation existing and organized under the laws of the State of Maryland, with its principal place of business located at 1401 Chain Bridge Rd., Suite 300, McLean, VA 22101.

2. Upon information and belief, Platinum is a limited liability company organized and existing under the laws of the State of New York.

3. Upon information and belief, Utica is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 180 Genesee Street,

8

New Hartford, New York 13413 and is authorized to act as surety in the State of New York.

4. This Court has jurisdiction over this counterclaim (1) by its mandatory nature, (2) on account of the complete diversity of citizenship of the parties and (3) as a matter of supplemental jurisdiction.

5. CFP and Platinum entered into an agreement whereby Platinum agreed to perform certain services for CFP.

6. Platinum was to provide certain services to CFP by and through purchase orders 2580-4(A) and 2580-4(B) (the "Purchase Orders"), which are attached hereto as Exhibit A and incorporated by this reference.

7. The Purchase Orders arose from the request for proposals ("RFP"), posted at www.nationalguardcontracting.org (the "RFP Site"), and Platinum's response to the RFP by letter dated May 15, 2006 (the "Platinum Quote"). Platinum sought to provide services under the contract NY-ANG to be awarded by the Departments of the Army and the Air Force National Guard Bureau (the "Agencies"). The contract duration was for 270 days.

8. Platinum offered "to furnish all supervision, labor, materials, tools and equipment to complete all plumbing and HVAC work at the above referenced project, according to all drawings, specs, and addendums . . ."

9. Prior to acceptance of any bids or proposals, the Agencies held a pre-Construction Conference on May 23, 2006 (the "Conference"). Chip Knapp attended the Conference on behalf of Platinum.

10. The Agencies accepted CFP's proposal, including Platinum as one of its subcontractors, and issued a notice to proceed on June 14, 2006.

11. Platinum as principal, and Utica, as surety, executed and delivered their performance and payment bonds to CFP, as obligee, for the faithful performance by Platinum of its obligations pursuant to the Purchase Orders. Copies of the said bonds are annexed hereto, marked Exhibit "B".

12. CFP and it subcontractors proceeded to commence work in accordance with the terms of the contract and all drawings, specifications and addenda thereto. By the terms of the contract, all work was to be completed by March 12, 2007.

13. On or about February 28, 2007, CFP notified Platinum that it had concerns that Platinum's work would not be completed by March 12, 2007.

14. On March 5, 2007, there was a significant water leak to the newly completed areas of the project. CFP notified Platinum of the leak and other material defects in its performance that CFP had discovered.

15. Platinum failed to respond to CFP's notifications and failed to complete its required work by March 12, 2007.

16. On or about March 9, 2007, a government inspector determined that Platinum had only completed approximately 85.5% of the work for which it had contracted.

17. Platinum failed to respond and had abandoned the job site.

18. By letter dated March 19, 2007, CFP terminated its agreement with Platinum.

19. On or about April 2007, the government inspector determined that its initial estimate of Platinum's work being 85.5% complete was in error and, in fact, at that point it was determined to be only 70-75% complete.

20. CFP has incurred additional expenses to correct the faulty work performed by Platinum and to finish the work Platinum failed to complete.

## COUNT I
### (Breach of Contract)

21. The allegations of paragraphs 1-20 are incorporated herein by this reference.

22. The parties entered into an Agreement.

23. Platinum breached the Parties' Agreement by failing to perform the services required of it pursuant to the Parties' Agreement. Platinum has been and continues to be in default under the parties' agreement.

24. CFP performed its obligations under the Parties' Agreement.

25. As a result of Platinum's breaches of contract, CFP has been and continues to be damaged. The amount of such damages will be determined at trial but, to date, it is at least in the amount of $ 400,000.00.

## COUNT II

## UTICA

26. The allegations of paragraphs 1-25 are incorporated herein by reference

27. By the issuance of their bonds, Utica and Platinum bound themselves, jointly and severally, to be liable to CFP in the event that Platinum failed to perform and/or failed to make the required payments.

28. Despite having been paid by CFP, Platinum failed and refused to perform its obligations.

29. Further, Platinum failed to make required payments to some of its own sub contractors.

11

30. As surety for Platinum, Utica is jointly and severally liable on account of

Platinum's breaches as aforesaid.


WHEREFORE, CFP demands judgment (1) that the Complaint be dismissed, with

prejudice, (2) that judgment be entered in favor of CFP and against Platinum and Utica,

(3) that CFP recover from Platinum and Utica, jointly and severally, the sum of at least

$ 400,000 on its amended  counterclaim together with interest thereon, (4) that CFP be

awarded its attorneys' fees and costs in defending this action and prosecuting its

counterclaim together with such other and further relief which the Court may deem just

and proper.

DE LUCA & FORSTER

By: _____
THOMAS G. DE LUCA ( TDL 6312)
Attorneys for Defendant - Counterclaimant
CFP Group, Inc.
11 Commerce Drive
Cranford, New Jersey 07016
Telephone (908) 931-1100
Facsimile (908) 272-2670


AND

Lori Vaughn Ebersohl
LORI VAUGHN EBERSOHL, PLLC
252 North Washington Street
Falls Church, VA  2204
Telephone (703) 534-4440
Facsimile (703) 534-4450

# EXHIBIT "A"



**THE CFP GROUP**

A Fire Protection Company

**PURCHASE ORDER**

P.O. No.    2580-4 (A)

Date:    5/31/2006

TO:    Platinum Mechanical Contractors
250 Greenwich Avenue
Goshen, NY 10924

Attn: Chap Knapp
Tel: 845-294-4046
Fax: 845-294-5063
Ref: NY-ANG

| ITEM | QTY | UNIT | PART NUMBER & DESCRIPTION | COST CODE | UNIT PRICE | AMOUNT |
|------|-----|------|--------------------------|-----------|------------|--------|
| 1 | 1 | | Per quote sent on 05/15/2006 | | | |
| | | | We will furnish all supervision, labor, materials, tools and equipment | | | |
| | | | to complete all plumbing and HVAC work | | | $609,785.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | Payment is net 15 days or 5 days after we receive payment (which ever comes last) | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | Notes: | | | |
| | | | a. Any additional charges not included in this P.O. must be approved by The CFP Group | | | |
| | | | b. Prior to payment, certified payrolls are required. | | | |
| | | | c. Invoices are due the 1st of each month. | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | per hr | Total: | $609,785.00 |

SHIP TO: _____

Ship: _____    Via: _____

SHIPMENT MUST BE RECEIVED BY:

Requisitioned by:    Roberto Clark
Charge:    Job# 2580
NY-ANG

MAIL 2 COPIES OF INVOICE AT TIME OF SHIPMENT

SHOW THE NO. OF THIS PURCHASE ORDER ON ALL
INVOICES AND DELIVERY MEMORANDUMS

IF SHIPPING IS OVER $100.00 PROVIDE A COPY
OF THE ORIGINAL FREIGHT BILL WITH THE INVOICE

MSDS INFORMATION IS REQUIRED

SHIP TO ATTN: _____

Using: _____

Term: Net 30 Days upon approval of invoice
Certified payrolls required with invoices.
All Materials Furnished Under This Purchase Order Shall Be Of
Quality Meeting U.S. Government Specifications & Requirements.

BILL TO:
The CFP Group (Attn: Roberto Clark)
1921 Gallows Rd, Suite 380
Vienna, VA 22182
    Phone: (301) 520-3019
    Fax: (703) 752-3268

AUTHORIZED SIGNATURE



# THE CFP GROUP
**A Fire Protection Company**

**PURCHASE ORDER**

| | |
|---|---|
| P.O. No. | 2580-4 (B) |
| Date: | 5/31/2006 |

TO:  Platinum Mechanical Contractors
250 Greenwich Avenue
Goshen, NY 10924

Attn: Chip Knapp
Tel: 845-294-4046
Fax: 845-294-5063
Ref: NY-ANG

| ITEM | QTY | UNIT | PART NUMBER & DESCRIPTION | COST CODE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | 1 | | Per quote sent on 05/15/2006 | ' | | |
| | | | HVAC Equipment | | | $489,481.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | Payment is net 15 days or 5 days after we receive payment (which ever comes last) | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | Notes: | | | |
| | | | a. Any additional charges not included in this P.O. must be approved by The CFP Group | | | |
| | | | b. Prior to payment, certified payrolls are required. | | | |
| | | | c. Invoices are due the 1st of each month. | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | per hr | Total: | $489,481.00 |

SHIP TO: _____

Ship: _____ Via: _____
SHIPMENT MUST BE RECEIVED BY: _____

Requisitioned by:  Roberto Clark
Charge:  Job# 2580
NY-ANG

MAIL 2 COPIES OF INVOICE AT TIME OF SHIPMENT

SHOW THE NO. OF THIS PURCHASE ORDER ON ALL
INVOICES AND DELIVERY MEMORANDUMS

IF SHIPPING IS OVER $100.00 PROVIDE A COPY
OF THE ORIGINAL FREIGHT BILL WITH THE INVOICE

MSDS INFORMATION IS REQUIRED

SHIP TO ATTN: _____

Using: _____
Term: Net 30 Days upon approval of invoice
Certified payrolls required with invoices.
All Materials Furnished Under This Purchase Order Shall Be Of
Quality Meeting U.S. Government Specifications & Requirements.

BILL TO:
The CFP Group (Attn: Roberto Clark)
1921 Gallows Rd, Suite 380
Vienna, VA 22182
Phone: (301) 523-3019
Fax: (703) 752-3288

AUTHORIZED SIGNATURE

Exhibit "B"

*AIA Document A312*

# Performance Bond                SU3950829

Conforms with the American Institute of Architects, AIA Document A312.
Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Platinum Mechanical, LLC
250 Greenwich Ave.
Goshen, New York 10924

SURETY (Name and Principal Place of Business):
Utica Mutual Insurance Company
180 Genesee Street
New Hartford, New York 13413

OWNER (Name and Address):
The CFP Group
1921 Gallows Road, Ste. 380
Vienna, VA 22182

CONSTRUCTION CONTRACT
    Date: July 10 2006
    Amount: Four Hundred Eighty Nine Thousand Four Hundred Sixty One Dollars and 00/100---------------------------
        ($489,461.00)
    Description (Name and Location): HVAC Equipment at Stewart Air National Guard Base, Newburgh, NY -

BOND
    Date (Not earlier than Construction Contract Date): July 12 2006
    Amount: Four Hundred Eighty Nine Thousand Four Hundred Sixty One Dollars and 00/100---------------------------
        ($489,461.00)

    Modifications to this Bond:      ☒ None      ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Platinum Mechanical, Inc    (Corporate Seal)

Signature: _____
Name and Title: _____
(Any additional signatures appear on page 2.)

(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: Atlynx Surety Brokers, LLC
777 Zeckendorf Blvd.
Garden City, NY 11530

SURETY
Company: Utica Mutual Insurance    (Corporate Seal)
Company

Signature: _____
Name and Title: Tara Laverdiere
Attorney-in-Fact
OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

**1**    The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**2**    If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

**3**    If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

    **3.1** The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to

perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

    **3.2** The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

    **3.3** The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

**4**    When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

**4.1** Arrange for the Contractor, with co   of the Owner, to perform and complete the Construction Contract; ..

**4.2** Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

**4.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

**4.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

    **.1** After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

    **.2** Deny liability in whole or in part and notify the Owner citing reasons therefor.

**5** If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**6** After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

    **6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    **6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

    **6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**7** The Surety sh    ot be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**8** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**9** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**10** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

**11** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**12 DEFINITIONS**

    **12.1** Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

    **12.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

    **12.3** Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

    **12.4** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

**Individual Acknowledgment**

State of _____

County of _____

On this _____ day of _____ , 19_____ , before me personally came
_____ to me known, and known to me
to be the individual in and who executed the foregoing instrument , and acknowledged to me that he/she
executed the same.

My commission expires_____    _____
                                                                        Notary Public

**Corporation Acknowledgment**

State of _____

County of _____

On the _____ day of _____ of the year _____ before me personally came _____
_____ to me known; who being by me duly sworn, did depose and say that
he/she/they reside(s) in _____ that he/she/they is (are) the
_____ of the _____ , the corporation described
in and which executed the above instrument; that he/she/they know(s) the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board
of directors of said corporation, and that he/she/they signed his/her/their name(s) thereto by like
authority.

**Surety Acknowledgment**

State of __ New York _____

County of __ Nassau _____

On the **12_____ day _of _July 2006 _____**personally came **Tara Laverdiere** to me known , who
being by me duly sworn did depose and say that he/she is an Attorney-in-Fact of **Utica Mutual
Insurance Company** in and which executed the above Instrument know(s) the corporate seal of said
corporation; that the seal affixed to the within instrument is such corporate seal, and that he/she/they
signed the said instrument and affixed the said seal as Attorney-in-fact by authority of the Board of
Directors of said corporation and by authority of this office under the standing resolution thereof.

My commission expires _____    _____
                                                                        Notary Public

Jaclyn Perez
Notary Public, State of New York
No. 01PE6091540
Qualified in Suffolk County
Commission Expires 4/28/2007

THE FACE OF THIS DOCUMENT HAS    COLORED BACKGROUND - NOT A WHIT    ACKGROUND THE BACK OF THIS DOCU

# UTICA MUTUAL INSURANCE COMPANY
### NEW HARTFORD, NEW YORK

**EXPIRATION DATE** March 31, 2007

## POWER OF ATTORNEY

*Know all men by these Presents,* the UTICA MUTUAL INSURANCE COMPANY, as a New York Corporation, having its principal office in the Town of New Hartford, County of Oneida, State of New York, does hereby make, constitute and appoint Louis J. Spina, Frank Abbatiello, Denese Thompson, Kim Spinello, Tara Laverdiere, Anthony J. Panno, Philip Samuels, Jaclyn Apodte, Nicole Gruter all of Garden City, New York

its true and lawful Attorney(s)-in-fact in their separate capacity if more than one is named above to make, execute, sign, seal and delivery for and on its behalf as surety and as its act and deed (without power of redelegation) any and all bonds and undertakings and other writings obligatory in the nature thereof (except bonds guaranteeing the payment of principal and interest of notes, mortgage bonds and mortgages) provided the amount of no one bond or undertaking exceeds     Four Million and 00/100*********     Dollars ($4,000,000.00     ).

The execution of such bonds and undertakings shall be as binding upon said UTICA MUTUAL INSURANCE COMPANY as fully and to all intents and purposes as if the same had been duly executed and acknowledged by its regularly elected officers and its Home Office in New Hartford, New York.

This Power of Attorney is granted under and by authority of the following resolution adopted by the Directors of the UTICA MUTUAL INSURANCE COMPANY on the 27th day of November, 1961.

"Resolved, that the President of any Vice-President, in conjunction with the Secretary or any Assistant Secretary, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly acknowledged by the regularly elected Officers of the Company in their own proper persons.

"No Therefore, the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney by a facsimile, and any such Power of Attorney bearing such facsimile signatures or seal shall be valid and binding upon the Company."

*In Witness Whereof,* the UTICA MUTUAL INSURANCE COMPANY has caused these presents to be signed by its Authorized Officers, this 26th day of August, 2005.

UTICA MUTUAL INSURANCE COMPANY

_____ Secretary

(seal: UTICA MUTUAL INSURANCE COMPANY 1914)

_____ Vice President

**STATE OF NEW YORK** } **ss:**
**COUNTY OF ONEIDA**

On this 26th day of August, 2005, before me, a Notary Public in and for the State of New York, personally came DANIEL D. DALY and GEORGE P. WARDLEY to me known, who acknowledged execution of the preceding instrument and, being by me duly sworn, do depose and say, that they are Vice President and Secretary respectively of UTICA MUTUAL INSURANCE COMPANY; and that the seal affixed to said instrument is the corporate seal of UTICA MUTUAL INSURANCE COMPANY; and that the said corporate seal is affixed to said instrument and their signatures subscribed to said instrument by authority and order of the Board of Directors of said Corporation.

*In Testimony Whereof,* I have hereunto set my hand at New Hartford, New York, the day and year first above written.

(seal: UTICA MUTUAL INSURANCE COMPANY 1914)

_____ Jackson B. Nelson, Notary Public

**STATE OF NEW YORK** } **ss:**
**COUNTY OF ONEIDA**

I, _____George P. Wardley_____, Secretary of the Utica Mutual Insurance Company do hereby certify that the foregoing Power of Attorney executed by said Utica Mutual Insurance Company and the above-quoted Resolutions of the Board of Directors adopted November 27, 1961 are still in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of the said Corporation at New Hartford, New York, this _____12_____ day of _____July_____, 20_06

_____ Secretary

# UTICA MUTUAL INSURANCE COMPANY

## FINANCIAL STATEMENT AS OF DECEMBER 31, 2005

| ASSETS | | LIABILITIES AND SURPLUS | |
|---|---|---|---|
| U.S. Governmental Direct Guaranteed Bonds | $ 99,456,164 | Reserve for all Losses | $ 802,765,216 |
| All Other Bonds | 1,396,160,690 | Unearned Premiums | 275,944,456 |
| Stocks | 198,523,312 | Reserve for Claim Expenses | 233,575,966 |
| Mortgages | 0 | Dividends | 11,872,686 |
| Cash | 11,073,470 | Taxes Accrued | 22,397,523 |
| Equities & Deposits in Pools and Associations | 8,252,763 | Federal Income Tax | 0 |
| Premiums in Course of Collection | 131,821,294 | Amounts Withheld on Account of Others | 8,869,272 |
| Interest Due and Accrued | 17,491,063 | Provision for Reinsurance | 20,711,291 |
| Other Admitted Assets | 188,612,170 | Miscellaneous Accounts Payable | 87,237,586 |
| **Total Admitted Assets** | **$ 2,051,390,926** | **Total Liabilities** | **$1,463,373,996** |

| Surplus Funds | | |
|---|---|---|
| Dividend Reserve | $ 4,006,849 | |
| General Voluntary Reserve | 1,500,000 | |
| Special Contingent Surplus | 1,700,000 | |
| Divisible Surplus | 580,810,081 | |
| Surplus as Regards Policyholders | | 588,016,930 |
| **Total** | $ | 2,051,390,926 |

STATE OF NEW YORK
COUNTY OF ONEIDA        ss:

Brian P. Lytwynec, President & COO of the UTICA MUTUAL INSURANCE COMPANY, New Hartford, New York, being duly sworn, says that he is the above described officer of said Corporation, and that on the 31st day of December, 2005, all of the assets shown above were the absolute property of the said Corporation, free and clear from all liens or claims thereon except as above stated, and that the foregoing statement is a full and true exhibit of all assets and liabilities of the said Corporation at the close of business December 31, 2005, according to the best of his knowledge, information and belief.

Subscribed and sworn to before me the 14th day of March, 2006.

President & COO

_Rosemary Wadas_

Notary Public in the State of New York
Appointed in Oneida County
My Commission Expires April 30, 2006        Attest

_George P. Wardley_

Secretary

8-8-50  Ed. 03-2006

*AIA Document A312*

# Performance Bond

SU3950828

Conforms with the American Institute of Architects, AIA Document A312.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

---

CONTRACTOR (Name and Address):
Platinum Mechanical, LLC
250 Greenwich Ave.
Goshen, New York 10924

SURETY (Name and Principal Place of Business):
Utica Mutual Insurance Company
180 Genesee Street
New Hartford, New York 13413

OWNER (Name and Address):
The CFP Group
1921 Gallows Road, Suite 380
Vienna, VA 22182

CONSTRUCTION CONTRACT

Date: July 10 2006
Amount: Six Hundred Nine Thousand Seven Hundred Eighty Five Dollars and 00/100-------------------------
($609,785.00)
Description (Name and Location): HVAC Work at Stewart Air National Guard Base, Newburgh, NY

BOND

Date (Not earlier than Construction Contract Date): July 12 2006
Amount: Six Hundred Nine Thousand Seven Hundred Eighty Five Dollars and 00/100------------------------
($609,785.00)

Modifications to this Bond:     ☒ None          ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Platinum Mechanical, LLC          (Corporate Seal)

Signature:
Name and Title:
(Any additional signatures appear on page 2.)

(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: Atlynx Surety Brokers, LLC
777 Zeckendorf Blvd.
Garden City, NY 11530

SURETY
Company: Utica Mutual Insurance          (Corporate Seal)
Company

Signature:
Name and Title: Tara Laverdiere
Attorney-in-Fact
OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

**1** The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**2** If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

**3** If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

**3.1** The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to

perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

**3.2** The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

**3.3** The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

**4** When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

**4.1** Arrange for the Contractor, with co    of the Owner, to perform and complete the Construction Contract; ᴗᴗ

**4.2** Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

**4.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract to perform and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

**4.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

　.1　After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

　.2　Deny liability in whole or in part and notify the Owner citing reasons therefor.

**5**　If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**6**　After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

　**6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

　**6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

　**6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**7**　The Surety sl    ot be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**8**　The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**9**　Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**10**　Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

**11**　When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**12 DEFINITIONS**

　**12.1**　Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

　**12.2**　Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

　**12.3**　Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

　**12.4**　Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: _Duntun Machmut_ | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: | | Signature: | |
| Name and Title: _Harry Kmmr  President_ | | Name and Title: | |
| Address: _250 Crownb Ave Closhn NY 10x_ | | Address: | |

**Individual Acknowledgment**

State of _____

County of_____

On this _____day of_____, 19____, before me personally came _____to me known, and known to me to be the individual in and who executed the foregoing instrument , and acknowledged to me that he/she executed the same.

My commission expires_____        _____
                                                                                            Notary Public

---

**Corporation Acknowledgment**

State of _____

County of _____

On the _____ day of _____of the year _____ before me personally came _____ _____ to me known; who being by me duly sworn, did depose and say that he/she/they reside(s) in _____ that he/she/they is (are) the _____ of the _____ , the corporation described in and which executed the above instrument; that he/she/they know(s) the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board of directors of said corporation, and that he/she/they signed his/her/their name(s) thereto by like authority.

---

**Surety Acknowledgment**

State of __New York_____

County of __Nassau_____

On the **12**_____day of **July 2006**_____personally came **Tara Laverdiere** to me known , who being by me duly sworn did depose and say that he/she is an Attorney-in-Fact of **Utica Mutual Insurance Company** in and which executed the above Instrument know(s) the corporate seal of said corporation; that the seal affixed to the within instrument is such corporate seal, and that he/she/they signed the said instrument and affixed the said seal as Attorney-in-fact by authority of the Board of Directors of said corporation and by authority of this office under the standing resolution thereof.

My commission expires _____        _____
                                                                                            Notary Public

Jaclyn Perez
Notary Public, State of New York
No. 01PE6095340
Qualified in Suffolk County
Commission Expires 4/28/2007

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND - NOT A WHIT... ACKGROUND THE BACK OF THIS DOCU

THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK - HOLD AT ANGLE TO VIEW THI

# UTICA MUTUAL INSURANCE COMPANY

## NEW HARTFORD, NEW YORK

EXPIRATION DATE March 31, 2007

## POWER OF ATTORNEY

*Know all men by these Presents*, the UTICA MUTUAL INSURANCE COMPANY, as a New York Corporation, having its principal office in the Town of New Hartford, County of Oneida, State of New York, does hereby make, constitute and appoint Louis J. Spina, Frank Abbatiello, Denise Thompson, Kim Sphrallo, Tara Taverdiere, Anthony J. Fenno, Philip Samuels, Jaclyn Apostle, Nicole Gruber all of
Garden City, New York

its true and lawful Attorney(s)-in-fact in their separate capacity if more than one is named above to make, execute, sign, seal and delivery for and on its behalf as surety and as its act and deed (without power of redelegation) any and all bonds and undertakings and other writings obligatory in the nature thereof (except bonds guaranteeing the payment of principal and interest of notes, mortgage bonds and mortgages) provided the amount of no one bond or undertaking exceeds ____ Four Million and 00/100******* Dollars ($4,000,000.00).

The execution of such bonds and undertakings shall be as binding upon said UTICA MUTUAL INSURANCE COMPANY as fully and to all intents and purposes as if the same had been duly executed and acknowledged by its regularly elected officers and its Home Office in New Hartford, New York.

This Power of Attorney is granted and by authority of the following resolution adopted by the Directors of the UTICA MUTUAL INSURANCE COMPANY on the 27th day of November, 1961.

Resolved, that the President of any Vice-President, in conjunction with the Secretary or any Assistant Secretary, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly acknowledged by the regularly elected Officers of the Company in their own proper persons.

"No Therefore, the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney by a facsimile, and any such Power of Attorney bearing such facsimile signatures or seal shall be valid and binding upon the Company."

*In Witness Whereof*, the UTICA MUTUAL INSURANCE COMPANY has caused these presents to be signed by its Authorized Officers, this 26th day of August, 2005.

Secretary

UTICA MUTUAL INSURANCE COMPANY

Vice-President

[Seal: UTICA MUTUAL INSURANCE COMPANY 1914]

STATE OF NEW YORK }
                    } ss:
COUNTY OF ONEIDA

On this 26th day of August, 2005, before me, a Notary Public in and for the State of New York, personally came DANIEL D. DALY and GEORGE P. WARDLEY to me known, who acknowledged execution of the preceding instrument and, being by me duly sworn, do depose and say, that they are Vice President and Secretary respectively of UTICA MUTUAL INSURANCE COMPANY; and that the seal instruments is the corporate seal of UTICA MUTUAL INSURANCE COMPANY; and that the said corporate seal is affixed and their signatures subscribed to said instrument by authority and order of the Board of Directors of said Corporation.

*In Testimony Whereof*, I have hereunto set my hand at New Hartford, New York, the day and year first above written.

Notary Public

[Seal: UTICA MUTUAL INSURANCE COMPANY 1914]

STATE OF NEW YORK }
                    } ss:
COUNTY OF ONEIDA

I, George P. Wardley, Secretary of the Utica Mutual Insurance Company do hereby certify that the foregoing Power of Attorney executed by said Utica Mutual Insurance Company and the above-quoted Resolutions of the Board of Directors adopted November 27, 1961 are still in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of the said Corporation at New Hartford, New York, this 12 day of July 20 06.

Secretary

# UTICA MUTUAL INSURANCE COMPANY

## FINANCIAL STATEMENT AS OF DECEMBER 31, 2005

| ASSETS | | LIABILITIES AND SURPLUS | |
|---|---|---|---|
| U.S. Governmental Direct Guaranteed Bonds | $ 99,456,164 | Reserve for all Losses | $ 802,765,216 |
| All Other Bonds | 1,396,160,690 | Unearned Premiums | 275,944,456 |
| Stocks | 198,523,312 | Reserve for Claim Expenses | 233,575,966 |
| Mortgages | 0 | Dividends | 11,872,686 |
| Cash | 11,073,470 | Taxes Accrued | 22,397,523 |
| Equities & Deposits in Pools and Associations | 8,252,763 | Federal Income Tax | 0 |
| Premiums in Course of Collection | 131,821,294 | Amounts Withheld on Account of Others | 8,869,272 |
| Interest Due and Accrued | 17,491,063 | Provision for Reinsurance | 20,711,291 |
| Other Admitted Assets | 188,612,170 | Miscellaneous Accounts Payable | 87,237,586 |
| **Total Admitted Assets** | **$ 2,051,390,926** | **Total Liabilities** | **$1,463,373,996** |

| Surplus Funds | | |
|---|---|---|
| Dividend Reserve | $ 4,006,849 | |
| General Voluntary Reserve | 1,500,000 | |
| Special Contingent Surplus | 1,700,000 | |
| Divisible Surplus | 580,810,081 | |
| Surplus as Regards Policyholders | | 588,016,930 |
| **Total** | $ | 2,051,390,926 |

STATE OF NEW YORK
COUNTY OF ONEIDA          ss:

Brian P. Lytwynec, President & COO of the UTICA MUTUAL INSURANCE COMPANY, New Hartford, New York, being duly sworn, says that he is the above described officer of said Corporation, and that on the 31st day of December, 2005, all of the assets shown above were the absolute property of the said Corporation, free and clear from all liens or claims thereon except as above stated, and that the foregoing statement is a full and true exhibit of all assets and liabilities of the said Corporation at the close of business December 31, 2005, according to the best of his knowledge, information and belief.

Subscribed and sworn to before me the 14th day of March, 2006.

President & COO

Notary Public in the State of New York
Appointed in Oneida County
My Commission Expires April 30, 2006          Attest

Secretary

8-B-50  Ed. 03-2006

*AIA Document A312*

# Payment Bond

SU3950829

Conforms with the American Institute of Architects, AIA Document A312.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Platinum Mechanical, LLC
250 Greenwich Ave.
Goshen, New York 10924

SURETY (Name and Principal Place of Business):
Utica Mutual Insurance Company
180 Genesee Street
New Hartford, New York 13413

OWNER (Name and Address):
The CFP Group
1921 Gallows Road, Suite 380
Vienna, VA 22182

CONSTRUCTION CONTRACT

Date: July 10 2006
Amount: Four Hundred Eighty Nine Thousand Four Hundred Sixty One Dollars and 00/100——————————
($489,461.00)
Description (Name and Location): HVAC Equipment at Stewart Air National Guard Base in Newburgh, NY

BOND

Date( Not earlier than Construction Contract Date): July 12 2006
Amount: Four Hundred Eighty Nine Thousand Four Hundred Sixty One Dollars and 00/100——————————
($489,461.00)

Modifications to this Bond:          ☒ None                    ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Platinum Mechanical, Inc          (Corporate Seal)

Signature:
Name and Title:
(Any additional signatures appear on page 2.)

(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: Atlynx Surety Brokers, LLC
777 Zeckendorf Blvd.
Garden City, NY 11530

SURETY
Company: Utica Mutual Insurance          (Corporate Seal)
Company

Signature:
Name and Title: Tara Laverdiere
Attorney-in-Fact
OWNER'S REPRESENTATIVE (Architect, Engineer or other
party):

**1** The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

**2** With respect to the Owner, this obligation shall be null and void if the Contractor:

**2.1** Promptly makes payment, directly or indirectly, for all sums due Claimants, and

**2.2** Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

**3** With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

**4** The Surety shall have no obligation to Claimants under this Bond until:

**4.1** Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

**4.2** Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

**.2** Have either received a rejection _ whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

**.3** Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

**5** If a notice required by paragraph 4 is given by Owner to the Contractor or to the Surety, that is sufficient compliance.

**6** When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

**6.1** Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

**6.2** Pay or arrange for payment of any undisputed amounts.

**7** The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**8** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

**9** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

**10** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**11** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which

the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**12** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

**13** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**14** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

**15 DEFINITIONS**

**15.1** Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

**15.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**15.3** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: PLATINUM MECHANICAL (Corporate Seal) | | Company: | (Corporate Seal) |
| Signature: | | Signature: | |
| Name and Title: Harry Kumar President | | Name and Title: | |
| Address: 2X Greenwich Ave Goshen NY 10924 | | Address: | |

**Individual Acknowledgment**

State of _____

County of_____

      On this _____day of_____, 19____, before me personally came
_____to me known, and known to me
to be the individual in and who executed the foregoing instrument , and acknowledged to me that he/she
executed the same.

My commission expires_____    _____
                                                 Notary Public

**Corporation Acknowledgment**

State of _____

County of _____

      On the ____ day of _____of the year _____ before me personally came _____
_____ to me known; who being by me duly sworn, did depose and say that
he/she/they reside(s) in _____ that he/she/they is (are) the
_____ of the _____ , the corporation described
in and which executed the above instrument; that he/she/they know(s) the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board
of directors of said corporation, and that he/she/they signed his/her/their name(s) thereto by like
authority.

**Surety Acknowledgment**    _____ ___

State of __New York_____

County of __Nassau_____

      On the **12**____day of **July 2006**_____personally came **Tara Laverdiere** to me known , who
being by me duly sworn did depose and say that he/she is an Attorney-in-Fact of **Utica Mutual
Insurance Company**  in and which executed the above Instrument  know(s) the corporate seal of said
corporation; that the seal affixed to the within instrument is such corporate seal, and that he/she/they
signed the said instrument and affixed the said seal as Attorney-in-fact by authority of the Board of
Directors of said corporation and by authority of this office under the standing resolution thereof.

My commission expires _____    _____
                                               Notary Public

Jaclyn Perez
Notary Public, State of New York
No. 01PE6091540
Qualified in Suffolk County
Commission Expires 4/28/2007

HE FACE OF THIS DOCUMENT HAS ʌ ᴄOLORED BACKGROUND - NOT A WHITE BACKGROUND THE BACK OF THIS DOCU

# UTICA MUTUAL INSURANCE COMPANY
### NEW HARTFORD, NEW YORK

EXPIRATION DATE March 31, 2007

## POWER OF ATTORNEY

*Know all men by these Presents,* the UTICA MUTUAL INSURANCE COMPANY, as a New York Corporation, having its principal office in the Town of New Hartford, County of Oneida, State of New York, does hereby make, constitute and appoint Louis J. Spina, Frank Abbatiello, Denese Thompson, Kim Spinello, Tara Laverdiere, Anthony J. Panno, Philip Samuels, Jaclyn Aponte, Nicole Gruter all of Garden City, New York

its true and lawful Attorney(s)-in-fact in their separate capacity if more than one is named above to make, execute, sign, seal and delivery for and on its behalf as surety and as its act and deed (without power of redelegation) any and all bonds and undertakings and other writings obligatory in the nature thereof (except bonds guaranteeing the payment of principal and interest of notes, mortgage bonds and mortgages) provided the amount of no one bond or undertaking exceeds ⸻ Four Million and 00/100********* ⸻ Dollars ($4,000,000.00⸻).

The execution of such bonds and undertakings shall be as binding upon said UTICA MUTUAL INSURANCE COMPANY as fully and to all intents and purposes as if the same had been duly executed and acknowledged by its regularly elected officers and its Home Office in New Hartford, New York.

This Power of Attorney is granted under and by authority of the following resolution adopted by the Directors of the UTICA MUTUAL INSURANCE COMPANY on the 27th day of November, 1961.

"Resolved, that the President of any Vice-President, in conjunction with the Secretary or any Assistant Secretary, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly acknowledged by the regularly elected Officers of the Company in their own proper persons.

"No Therefore, the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney by a facsimile, and any such Power of Attorney bearing such facsimile signatures or seal shall be valid and binding upon the Company."

*In Witness Whereof,* the UTICA MUTUAL INSURANCE COMPANY has caused these presents to be signed by its Authorized Officers, this 26th day of August, 2005.

UTICA MUTUAL INSURANCE COMPANY

_____
Secretary

_____
Vice-President

STATE OF NEW YORK } ss:
COUNTY OF ONEIDA }

On this 26th day of August, 2005, before me, a Notary Public in and for the State of New York, personally came DANIEL D. DALY and GEORGE P. WARDLEY to me known, who acknowledged execution of the preceding instrument and, being by me duly sworn, do depose and say, that they are Vice President and Secretary respectively of UTICA MUTUAL INSURANCE COMPANY; and that the seal affixed to said instrument is the corporate seal of UTICA MUTUAL INSURANCE COMPANY; and that the said corporate seal is affixed to said instrument and their signatures subscribed to said instrument by authority and order of the Board of Directors of said Corporation.

*In Testimony Whereof,* I have hereunto set my hand at New Hartford, New York, the day and year first above written.

_____
Notary Public

STATE OF NEW YORK } ss:
COUNTY OF ONEIDA }

I, _____George P. Wardley_____, Secretary of the Utica Mutual Insurance Company do hereby certify that the foregoing Power of Attorney executed by said Utica Mutual Insurance Company and the above-quoted Resolutions of the Board of Directors adopted November 27, 1961 are still in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of the said Corporation at New Hartford, New York, this __12__ day of __July__, 20_06_.

_____
Secretary

E BACKGROUND THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK • HOLD AT ANGLE TO VIEW THI

# U..CA MUTUAL INSURANCE CUMPANY

## FINANCIAL STATEMENT AS OF DECEMBER 31, 2005

| ASSETS | | LIABILITIES AND SURPLUS | |
|---|---|---|---|
| U.S. Governmental Direct Guaranteed Bonds | $    99,456,164 | Reserve for all Losses | $  802,765,216 |
| All Other Bonds | 1,396,160,690 | Unearned Premiums | 275,944,456 |
| Stocks | 198,523,312 | Reserve for Claim Expenses | 233,575,966 |
| Mortgages | 0 | Dividends | 11,872,686 |
| Cash | 11,073,470 | Taxes Accrued | 22,397,523 |
| Equities & Deposits in Pools and Associations | 8,252,763 | Federal Income Tax | 0 |
| Premiums in Course of Collection | 131,821,294 | Amounts Withheld on Account of Others | 8,869,272 |
| Interest Due and Accrued | 17,491,063 | Provision for Reinsurance | 20,711,291 |
| Other Admitted Assets | 188,612,170 | Miscellaneous Accounts Payable | 87,237,586 |
| **Total Admitted Assets** | $  2,051,390,926 | **Total Liabilities** | $1,463,373,996 |

Surplus Funds

| | | |
|---|---|---|
| Dividend Reserve | $          4,006,849 | |
| General Voluntary Reserve | 1,500,000 | |
| Special Contingent Surplus | 1,700,000 | |
| Divisible Surplus | 580,810,081 | |
| Surplus as Regards Policyholders | | 588,016,930 |
| **Total** | $ | 2,051,390,926 |

STATE OF NEW YORK
COUNTY OF ONEIDA          ss:

Brian P. Lytwynec, President & COO of the UTICA MUTUAL INSURANCE COMPANY, New Hartford, New York, being duly sworn, says that he is the above described officer of said Corporation, and that on the 31st day of December, 2005, all of the assets shown above were the absolute property of the said Corporation, free and clear from all liens or claims thereon except as above stated, and that the foregoing statement is a full and true exhibit of all assets and liabilities of the said Corporation at the close of business December 31, 2005, according to the best of his knowledge, information and belief.

Subscribed and sworn to before me the 14th day of March, 2006.

President & COO

Notary Public in the State of New York
Appointed in Oneida County
My Commission Expires April 30, 2006          Attest

Secretary

8-B-50  Ed. 03-2006

*AIA Document A312*

# Payment Bond

SU3950828

Conforms with the American Institute of Architects, AIA Document A312.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Platinum Mechanical, LLC
250 Greenwich Ave
Goshen, New York 10924

SURETY (Name and Principal Place of Business):
Utica Mutual Insurance Company
180 Genesee Street
New Hartford, New York 13413

OWNER (Name and Address):
The CFP Group
1921 Gallows Road, Suite 380
Vienna, VA 22182

CONSTRUCTION CONTRACT

Date: July 10 2006

Amount: Six Hundred Nine Thousand Seven Hundred Eighty Five Dollars and 00/100——————————————
($609,785.00)

Description (Name and Location): HVAC Work at Stewart Air National Guard Base in Newburgh, NY

BOND

Date( Not earlier than Construction Contract Date): July 12 2006

Amount: Six Hundred Nine Thousand Seven Hundred Eighty Five Dollars and 00/100——————————————
($609,785.00)

Modifications to this Bond:        ☒ None        ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Platinum Mechanical, LLC        (Corporate Seal)

Signature: _____
Name and Title: _____
(Any additional signatures appear on page 2.)

(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: Atlynx Surety Brokers, LLC
777 Zeckendorf Blvd.
Garden City, NY 11530

SURETY
Company: Utica Mutual Insurance        (Corporate Seal)
Company

Signature: _____
Name and Title: Tara Laverdiere
Attorney-in-Fact
OWNER'S REPRESENTATIVE (Architect, Engineer or other
party):

**1**  The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

**2**  With respect to the Owner, this obligation shall be null and void if the Contractor:

**2.1** Promptly makes payment, directly or indirectly, for all sums due Claimants, and

**2.2** Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

**3**  With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

**4**  The Surety shall have no obligation to Claimants under this Bond until:

**4.1** Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

**4.2** Claimants who do not have a direct contract with the Contractor:

 **.1** Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2' Have either received a rejection or whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

**5** If a notice required by paragraph 4 is given by Owner to the Contractor or to the Surety, that is sufficient compliance.

**6** When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

**6.1** Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

**6.2** Pay or arrange for payment of any undisputed amounts.

**7** The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**8** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

**9** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

**10** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**11** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which

the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4. 1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**12** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

**13** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**14** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

**15 DEFINITIONS**

**15.1** Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

**15.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**15.3** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL

Company: ~~Penthum Mochanual~~    (Corporate Seal)

Signature: 

Name and Title: Harry Watt Prophet

Address: 23V Greenwich Ave Geshn NY 10924

SURETY

Company:    (Corporate Seal)

Signature: _____

Name and Title:

Address:

**Individual Acknowledgment**

State of _____

County of_____

On this _____day of_____, 19____, before me personally came
_____to me known, and known to me
to be the individual in and who executed the foregoing instrument , and acknowledged to me that he/she
executed the same.

My commission expires_____     _____
                                                                                    Notary Public

--------------------------------------------------------------------------------

**Corporation Acknowledgment**

State of _____

County of _____

On the ____ day of _____of the year _____ before me personally came _____
_____ to me known; who being by me duly sworn, did depose and say that
he/she/they reside(s) in _____ that he/she/they is (are) the
_____ of the _____ , the corporation described
in and which executed the above instrument; that he/she/they know(s) the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board
of directors of said corporation, and that he/she/they signed his/her/their name(s) thereto by like
authority.

--------------------------------------------------------------------------------

**Surety Acknowledgment**

State of __ New York_____

County of __ Nassau_____

On the 12____day of July 2006____personally came **Tara Laverdiere** to me known , who
being by me duly sworn did depose and say that he/she is an Attorney-in-Fact of **Utica Mutual
Insurance Company** in and which executed the above instrument know(s) the corporate seal of said
corporation; that the seal affixed to the within instrument is such corporate seal, and that he/she/they
signed the said instrument and affixed the said seal as Attorney-in-fact by authority of the Board of
Directors of said corporation and by authority of this office under the standing resolution thereof.

My commission expires _____     _____
                                                                                    Notary Public

Jaclyn Perez
Notary Public, State of New York
No. 01PE6091540
Qualified in Suffolk County
Commission Expires 4/28/2007

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND - NOT A WHITE BACKGROUND THE BACK OF THIS DOCU

# UTICA MUTUAL INSURANCE COMPANY
### NEW HARTFORD, NEW YORK

**EXPIRATION DATE** March 31, 2007

## POWER OF ATTORNEY

*Know all men by these Presents*, the UTICA MUTUAL INSURANCE COMPANY, as a New York Corporation, having its principal office in the Town of New Hartford, County of Oneida, State of New York, does hereby make, constitute and appoint Louis J. Spina, Frank Abbatiello, Denese Thompson, Kim Spinello, Tara Laverdiere, Anthony J. Panno, Philip Samuels, Jaclyn Aponte, Nicole Gruter all of
Garden City, New York
its true and lawful Attorney(s)-in-fact in their separate capacity if more than one is named above to make, execute, sign, seal and delivery for and on its behalf as surety and as its act and deed (without power of redelegation) any and all bonds and undertakings and other writings obligatory in the nature thereof (except bonds guaranteeing the payment of principal and interest of notes, mortgage bonds and mortgages) provided the amount of no one bond or undertaking exceeds:  Four Million and 00/E00********** Dollars ($4,000,000.00     ).

The execution of such bonds and undertakings shall be as binding upon said UTICA MUTUAL INSURANCE COMPANY as fully and to all intents and purposes as if the same had been duly executed and acknowledged by its regularly elected officers and its Home Office in New Hartford, New York.

This Power of Attorney is granted under and by authority of the following resolution adopted by the Directors of the UTICA MUTUAL INSURANCE COMPANY on the 27th day of November, 1961.

"Resolved, that the President or any Vice-President, in conjunction with the Secretary or any Assistant Secretary, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly acknowledged by the regularly elected Officers of the Company in their own proper persons.

"No Therefore, the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney by a facsimile, and any such Power of Attorney bearing such facsimile signatures or seal shall be valid and binding upon the Company."

*In Witness Whereof,* the UTICA MUTUAL INSURANCE COMPANY has caused these presents to be signed by its Authorized Officers, this 26th day of August, 2005.



*George P Wardley*
Secretary

**UTICA MUTUAL INSURANCE COMPANY**

*Daniel Daly*
Vice President

**STATE OF NEW YORK** } ss:
**COUNTY OF ONEIDA**

On this 26th day of August, 2005, before me, a Notary Public in and for the State of New York, personally came DANIEL D. DALY and GEORGE P. WARDLEY to me known, who acknowledged execution of the preceding instrument and, being by me duly sworn, do depose and say, that they are Vice President and Secretary respectively of UTICA MUTUAL INSURANCE COMPANY; and that the seal affixed to said instrument is the corporate seal of UTICA MUTUAL INSURANCE COMPANY; and that the said corporate seal is affixed and their signatures subscribed to said instrument by authority and order of the Board of Directors of said Corporation.

*In Testimony Whereof,* I have hereunto set my hand at New Hartford, New York, the day and year first above written.

*Jackson B. Nelson*
Notary Public

**STATE OF NEW YORK** } ss:
**COUNTY OF ONEIDA**

I,      George P. Wardley      , Secretary of the Utica Mutual Insurance Company do hereby certify that the foregoing Power of Attorney executed by said Utica Mutual Insurance Company and the above-quoted Resolutions of the Board of Directors adopted November 27, 1961 are still in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of the said Corporation at New Hartford, New York, this      12      day of      July      , 20 06.

*George P Wardley*
Secretary

# UTICA MUTUAL INSURANCE COMPANY

## FINANCIAL STATEMENT AS OF DECEMBER 31, 2005

| ASSETS | | LIABILITIES AND SURPLUS | |
|---|---|---|---|
| U.S. Governmental Direct Guaranteed Bonds | $ 99,456,164 | Reserve for all Losses | $ 802,765,216 |
| All Other Bonds | 1,396,160,690 | Unearned Premiums | 275,944,456 |
| Stocks | 198,523,312 | Reserve for Claim Expenses | 233,575,966 |
| Mortgages | 0 | Dividends | 11,872,686 |
| Cash | 11,073,470 | Taxes Accrued | 22,397,523 |
| Equities & Deposits in Pools and Associations | 8,252,763 | Federal Income Tax | 0 |
| Premiums in Course of Collection | 131,821,294 | Amounts Withheld on Account of Others | 8,869,272 |
| Interest Due and Accrued | 17,491,063 | Provision for Reinsurance | 20,711,291 |
| Other Admitted Assets | 188,612,170 | Miscellaneous Accounts Payable | 87,237,586 |
| **Total Admitted Assets** | **$ 2,051,390,926** | **Total Liabilities** | **$1,463,373,996** |

| | | |
|---|---|---|
| Surplus Funds | | |
| Dividend Reserve | $ 4,006,849 | |
| General Voluntary Reserve | 1,500,000 | |
| Special Contingent Surplus | 1,700,000 | |
| Divisible Surplus | 580,810,081 | |
| Surplus as Regards Policyholders | | 588,016,930 |
| **Total** | $ | **2,051,390,926** |

STATE OF NEW YORK
COUNTY OF ONEIDA          ss:

Brian P. Lytwynec, President & COO of the UTICA MUTUAL INSURANCE COMPANY, New Hartford, New York, being duly sworn, says that he is the above described officer of said Corporation, and that on the 31st day of December, 2005, all of the assets shown above were the absolute property of the said Corporation, free and clear from all liens or claims thereon except as above stated, and that the foregoing statement is a full and true exhibit of all assets and liabilities of the said Corporation at the close of business December 31, 2005, according to the best of his knowledge, information and belief.

Subscribed and sworn to before me the 14th day of March, 2006.

President & COO

Notary Public in the State of New York
Appointed in Oneida County
My Commission Expires April 30, 2006          Attest

Secretary

8-B-50  Ed. 03-2006