# EXHIBIT "A"

*AIA Document A312*

# Performance Bond     SU3950828

Conforms with the American Institute of Architects, AIA Document A312.
Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Platinum Mechanical, LLC
250 Greenwich Ave.
Goshen, New York 10924

SURETY (Name and Principal Place of Business):
Utica Mutual Insurance Company
180 Genesee Street
New Hartford, New York 13413

OWNER (Name and Address):
The CFP Group
1921 Gallows Road, Suite 380
Vienna, VA 22182

CONSTRUCTION CONTRACT
    Date: July 10 2006
    Amount: Six Hundred Nine Thousand Seven Hundred Eighty Five Dollars and 00/100----------------
        ($609,785.00)
    Description (Name and Location): HVAC Work at Stewart Air National Guard Base, Newburgh, NY

BOND
    Date (Not earlier than Construction Contract Date): July 12 2006
    Amount: Six Hundred Nine Thousand Seven Hundred Eighty Five Dollars and 00/100----------------
        ($609,785.00)
    Modifications to this Bond:        ☒ None        ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Platinum Mechanical, LLC        (Corporate Seal)

Signature: _____
Name and Title:
(Any additional signatures appear on page 2.)

(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: Atlynx Surety Brokers, LLC
777 Zeckendorf Blvd.
Garden City, NY 11530

SURETY
Company: Utica Mutual Insurance Company        (Corporate Seal)

Signature: _____
Name and Title: Tara Laverdiere
Attorney-in-Fact

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

    3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

    3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

    3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4 When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

4.1 Arrange for the Contractor, with co     of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

  .1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

  .2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety sl    ot be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## 12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: Dipthun Machmut | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: | | Signature: | |
| Name and Title: HAnny Knmr Presid | | Name and Title: | |
| Address: 250 Granwib Ave Cohn NJ | | Address: | |

S-1852/GEEF 10/99          Page 2 of 2

**Individual Acknowledgment**

State of _____

County of _____

On this _____ day of _____, 19___, before me personally came
_____ to me known, and known to me
to be the individual in and who executed the foregoing instrument, and acknowledged to me that he/she executed the same.

My commission expires _____        _____
                                                                    Notary Public

---

**Corporation Acknowledgment**

State of _____

County of _____

On the ____ day of _____ of the year _____ before me personally came _____
_____ to me known; who being by me duly sworn, did depose and say that
he/she/they reside(s) in _____ that he/she/they is (are) the
_____ of the _____, the corporation described
in and which executed the above instrument; that he/she/they know(s) the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board
of directors of said corporation, and that he/she/they signed his/her/their name(s) thereto by like
authority.

---

**Surety Acknowledgment**

State of __New York__

County of __Nassau__

On the __12__ day of __July 2006__ personally came __Tara Laverdiere__ to me known, who being by me duly sworn did depose and say that he/she is an Attorney-in-Fact of __Utica Mutual Insurance Company__ in and which executed the above Instrument know(s) the corporate seal of said corporation; that the seal affixed to the within instrument is such corporate seal, and that he/she/they signed the said instrument and affixed the said seal as Attorney-in-fact by authority of the Board of Directors of said corporation and by authority of this office under the standing resolution thereof.

My commission expires _____        _____
                                                                    Notary Public

Jaclyn Perez
Notary Public, State of New York
No. 01PE6091540
Qualified in Suffolk County
Commission Expires 4/28/2007

HE FACE OF THIS DOCUMENT HAS . OLORED BACKGROUND - NOT A WHIT. ACKGROUND THE BACK OF THIS DOCU

# UTICA MUTUAL INSURANCE COMPANY
### NEW HARTFORD, NEW YORK

EXPIRATION DATE March 31, 2007

## POWER OF ATTORNEY

*Know all men by these Presents,* the UTICA MUTUAL INSURANCE COMPANY, as a New York Corporation, having its principal office in the Town of New Hartford, County of Oneida, State of New York, does hereby make, constitute and appoint Louis J. Spina, Frank Abbatiello, Denese Thompson, Kim Spinello, Tara Laverdiere, Anthony J. Penno, Philip Samuels, Jaclyn Aponte, Nicole Gruter all of Garden City, New York

its true and lawful Attorney(s)-in-fact in their separate capacity if more than one is named above to make, execute, sign, seal and delivery for and on its behalf as surety and as its act and deed (without power of redelegation) any and all bonds and undertakings and other writings obligatory in the nature thereof (except bonds guaranteeing the payment of principal and interest of notes, mortgage bonds and mortgages) provided the amount of no one bond or undertaking exceeds: Four Million and 00/100************ Dollars ($4,000,000.00    ).

The execution of such bonds and undertakings shall be as binding upon said UTICA MUTUAL INSURANCE COMPANY as fully and to all intents and purposes as if the same had been duly executed and acknowledged by its regularly elected officers and its Home Office in New Hartford, New York.

This Power of Attorney is granted under and by authority of the following resolution adopted by the Directors of the UTICA MUTUAL INSURANCE COMPANY on the 27th day of November, 1961.

"Resolved, that the President of any Vice-President, in conjunction with the Secretary or any Assistant Secretary, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly acknowledged by the regularly elected Officers of the Company in their own proper persons.

"No Therefore, the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney by a facsimile, and any such Power of Attorney bearing such facsimile signatures or seal shall be valid and binding upon the Company."

*In Witness Whereof,* the UTICA MUTUAL INSURANCE COMPANY has caused these presents to be signed by its Authorized Officers, this 26th day of August, 2005.

UTICA MUTUAL INSURANCE COMPANY

_____ Secretary    _____ Vice President

STATE OF NEW YORK } ss:
COUNTY OF ONEIDA }

On this 26th day of August, 2005, before me, a Notary Public in and for the State of New York, personally came DANIEL D. DALY and GEORGE P. WARDLEY to me known, who acknowledged execution of the preceding instrument and, being by me duly sworn, do depose and say, that they are Vice President and Secretary respectively of UTICA MUTUAL INSURANCE COMPANY; and that the seal affixed to said instrument is the corporate seal of UTICA MUTUAL INSURANCE COMPANY; and that the said corporate seal is affixed and their signatures subscribed to said instrument by authority and order of the Board of Directors of said Corporation.

*In Testimony Whereof,* I have hereunto set my hand at New Hartford, New York, the day and year first above written.

_____ Notary Public

STATE OF NEW YORK } ss:
COUNTY OF ONEIDA }

I, _____ George P. Wardley _____, Secretary of the Utica Mutual Insurance Company do hereby certify that the foregoing Power of Attorney executed by said Utica Mutual Insurance Company and the above-quoted Resolutions of the Board of Directors adopted November 27, 1961 are still in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of the said Corporation at New Hartford, New York, this ____12____ day of ____July____, 20_06.

_____ Secretary

BACKGROUND THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK - HOLD AT ANGLE TO VIEW THI

## UTICA MUTUAL INSURANCE COMPANY

### FINANCIAL STATEMENT AS OF DECEMBER 31, 2005

| ASSETS | | LIABILITIES AND SURPLUS | |
|---|---:|---|---:|
| U.S. Governmental Direct Guaranteed Bonds | $ 99,456,164 | Reserve for all Losses | $ 802,765,216 |
| All Other Bonds | 1,396,160,690 | Unearned Premiums | 275,944,456 |
| Stocks | 198,523,312 | Reserve for Claim Expenses | 233,575,966 |
| Mortgages | 0 | Dividends | 11,872,686 |
| Cash | 11,073,470 | Taxes Accrued | 22,397,523 |
| Equities & Deposits in Pools and Associations | 8,252,763 | Federal Income Tax | 0 |
| Premiums in Course of Collection | 131,821,294 | Amounts Withheld on Account of Others | 8,869,272 |
| Interest Due and Accrued | 17,491,063 | Provision for Reinsurance | 20,711,291 |
| Other Admitted Assets | 188,612,170 | Miscellaneous Accounts Payable | 87,237,586 |
| **Total Admitted Assets** | **$ 2,051,390,926** | **Total Liabilities** | **$1,463,373,996** |

Surplus Funds
- Dividend Reserve $ 4,006,849
- General Voluntary Reserve 1,500,000
- Special Contingent Surplus 1,700,000
- Divisible Surplus 580,810,081
- Surplus as Regards Policyholders 588,016,930
- Total $ 2,051,390,926

STATE OF NEW YORK
COUNTY OF ONEIDA    ss:

Brian P. Lytwynec, President & COO of the UTICA MUTUAL INSURANCE COMPANY, New Hartford, New York, being duly sworn, says that he is the above described officer of said Corporation, and that on the 31st day of December, 2005, all of the assets shown above were the absolute property of the said Corporation, free and clear from all liens or claims thereon except as above stated, and that the foregoing statement is a full and true exhibit of all assets and liabilities of the said Corporation at the close of business December 31, 2005, according to the best of his knowledge, information and belief.

Subscribed and sworn to before me the 14th day of March, 2006.

*[Signature]*
President & COO

*[Signature: Rosemary Wadas]*
Notary Public in the State of New York
Appointed in Oneida County
My Commission Expires April 30, 2006    Attest

*[Signature: George P. Wardley]*
Secretary

8-B-50 Ed. 03-2006