UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

THE UNITED STATES FOR THE USE AND BENEFIT                Case # 07 civ. 3318 (CLB)(LMS)
OF PLATINUM MECHANICAL, LLC,

                                    Plaintiff,

         -against-


UNITED STATES SURETY COMPANY,
US SPECIALTY INSURANCE COMPANY and

CFP GROUP, INC.

                                    Defendants.

CFP GROUP, INC.,

         -against-

UTICA MUTUAL INSURANCE COMPANY.

                    Additional Defendant on the Counterclaim
-------------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ADDITIONAL
DEFENDANT ON THE COUNTERCLAIM, UTICA MUTUAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT**


                         MOUND COTTON WOLLAN & GREENGRASS
                         One Battery Park Plaza
                         New York, New York 10004
                         (212) 804-4200

                         Attorneys for Additional Defendant on the Counterclaim
                         Utica Mutual Insurance Company

Of Counsel:
         John Mezzacappa

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT**..................................................................................................1

**STATEMENT OF FACTS**......................................................................................................1

**ARGUMENT**.............................................................................................................................2

**POINT I**

      **CFP'S ADMITTED BREACH OF THE CONDITIONS
OF THE PERFORMANCE BOND WARRANTS
SUMMARY JUDGMENT IN UTICA MUTUAL'S
FAVOR**.......................................................................................................................2

**POINT II**

      **CFP'S ARGUMENTS TO AVOID THE PLAIN
MEANING OF THE PERFORMANCE BOND
PROVISIONS LACK ANY MERIT**.........................................................................7

**CONCLUSION**.........................................................................................................................10

# TABLE OF AUTHORITIES

**Case**                                                                              **Page**

120 Greenwich Dev. Assoc., LLC v. Reliance Ins. Com.,
    01 Civ. 8219 (PKL), 2004 U.S. Dist. LEXIS 10514 (S.D.N.Y. 2004).......................3,7,10

Bank of Brewton Inc. v. Int'l Fid. Ins. Co.,
    827 So. 2d 747, 753 (Ala. 2002)...............................................................10

Cam-Ful Industries, Inc. v. Fidelity and Deposit Company of Maryland,
    922 F2d 156 (2d Cir. 1991)...................................................................9

Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC et al.,
    376 F.3d 96, 100 (2d Cir. 2004)..............................................................7

Enterprise Capital,
    284 F.Supp.2d 166, 179-181 (D. Mass. 2003)...............................................10

General Auth. for Supply Commodities v. Ins. Co. of N. Am.,
    951 F. Supp. 1097, 1109 (S.D.N.Y. 1997)..................................................7,8

Hunt Ltd. v. Lifschultz Fast Freight Inc.,
    889 F.2d 1274, 1277 (2nd Cir. 1989).........................................................8

Karash v. Riverside Sav. & Loan Asso.,
    No. CV 88-1429, 1989 U.S. Dist. LEXIS 597, at *5 (E.D.N.Y. Jan. 4, 1989)...................7

Mendel-Mesick-Cohen-Architects v. Peerless Ins. Co.,
    426 N.Y.S.2d 124, 126 (3d Dept. 1980).....................................................7

Metro. Life Ins. Co. et al v. RJR Nabisco Inc.,
    906 F.2d 884, 889 (2nd Cir. 1990)..........................................................8

Mid-State Precast Sys. Inc. v. Corbetta Constr. Co. Inc.,
    608 N.Y.S.2d 546, 550 (3d Dept. 1994)....................................................7

Nobel Ins. Co. v. City of New York, 00-CV-1328 (KMK),
    2006 U.S. Dist. LEXIS 70816, at *31 (S.D.N.Y. Sept. 29, 2006)..............................7

Seaboard Surety Co. v. Town of Greenfield,
    370 F.3d 215, 216 (1st Cir. 2004)..........................................................10

Terwilliger v. Terwilliger,
    206 F.3d 240, 245 (2nd Cir. 2000)..........................................................7

**Case**                                                                 **Page**

Testamentum v. Mitchell,
        No. 88 Civ. 5300 (PKL), 1990 U.S. Dist. LEXIS 932,
        at *3-4 (S.D.N.Y. Jan. 31, 1990)..................................................................7

Town of Clarkstown v. North River Ins. Co.,
        803 F.Supp. 827 (S.D.N.Y. 1992).........................................................9

United States Fidelity and Guaranty v. Braspetro Oil Services,
        369 F.3d 34 (2nd Cir. 2004)...........................................................3,7,10

Walter Concrete Constr. Corp. v. Lederle Labs, et al.,
        99 N.Y.2d 603, 758 N.Y.S.2d 260 (2003)........................................3,10

## PRELIMINARY STATEMENT

This memorandum of law is submitted by Additional Defendant on the Counterclaim, Utica Mutual Insurance Company ("Utica Mutual"), in reply to papers submitted by CFP Group Inc. ("CFP") in opposition to Utica Mutual's motion for summary judgment.

CFP raises no triable issues of fact in its opposition papers. Rather, CFP admits that it breached the pre-default notification and other requirements of Utica Mutual's Performance Bond. CFP further attempts to effectively rewrite the Performance Bond, not only to selectively ignore the requirements of Paragraph 3, but also to eliminate three out of four of the express options available to Utica Mutual under Paragraph 4 of the Performance Bond. CFP's unfounded approach to construction of the Performance Bond cannot withstand a judicial scrutiny.[1]

## STATEMENT OF FACTS

The relevant facts are laid out in Utica Mutual's initial moving papers. The facts as they relate to this motion for summary judgment remain undisputed. Some omissions by CFP in its statement of facts are corrected here.

In its statement of facts, CFP states that CFP notified Platinum, but not Utica Mutual, on February 28, 2007 that CFP "had concerns that Platinum's work would not be completed by March 12, 2007." (CFP MEMORANDUM p.2). CFP next states that Platinum was orally notified on March 12, 2007 that it was in default. (Clark Aff. ¶ 12). CFP omits mention of the fact that on March 7, 2007 an extension of the completion date for the contract until March 30, 2007 was given by the government Agencies. (Ryan Reply Aff., Exhibit I). CFP proceeds to claim that it notified Utica Mutual of Platinum's default by sending a copy of its letter of March 19, 2007 to Utica Mutual's agent, Tara Lavediere of Atlynx Surety Brokers, LLC ("Atlynx")

---

[1] In its Rule 56.1 statement CFP admits that it has no claim at present under Utica Mutual's Payment Bond.

located at Suite 2, 777 Zeckendorf Blvd., Garden City, New York 11530-2127. Atlynx is an independent brokerage. (Ryan Reply Aff. ¶ 4). The Performance Bond provides in Paragraph 10 that "Notice to the Surety, [Utica Mutual] the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page." (Ryan Aff. Exhibit A). The address shown on the signature page for Utica Mutual is "Utica Mutual Insurance Company 180 Genessee Street, New Hartford, New York 13413." (Ryan Aff. Exhibit A). Realizing that the declaration of default was never sent to Utica Mutual at its specified address, on May 2, 2007 CFP's attorney sent a letter declaring the default to Utica Mutual at the address expressly provided for this purpose in the Performance Bond. (Ryan Aff. Exhibits A and E). CFP never sent pre-default notification of any kind to either Platinum or Utica Mutual. By the time the March 19, 2007 letter was written, CFP had already declared a default by Platinum and terminated Platinum's right to complete the contract by barring Platinum from the work site. (Ryan Reply Aff. Exhibit J).

## ARGUMENT

### POINT I

#### CFP'S ADMITTED BREACH OF THE CONDITIONS OF THE PERFORMANCE BOND WARRANTS SUMMARY JUDGMENT IN UTICA MUTUAL'S FAVOR

Nowhere in its opposition papers does CFP dispute the undeniable fact that it blatantly ignored all of the notification and other requirements contained in Paragraph 3 of the Performance Bond. Yet, CFP argues that it somehow should be excused from its breach of all of these requirements and still be permitted to enjoy the benefits of the bond. This argument does not warrant serious consideration.

The law in New York is clear that the requirements of Paragraph 3 of Utica Mutual's AIA 312 Performance Bond are conditions precedent to Utica Mutual's obligations under the bond.

120 Greenwich Dev. Assoc., LLC v. Reliance Ins. Com., 01 Civ. 8219 (PKL), 2004 U.S. Dist.

LEXIS 10514 (S.D.N.Y. 2004); Walter Concrete Constr. Corp. v. Lederle Labs, et al., 99 N.Y.2d

603, 758 N.Y.S.2d 260 (2003); United States Fidelity and Guaranty v. Braspetro Oil Services,

369 F.3d 34 (2nd Cir. 2004).  The reasons for the requirements laid out in Paragraph 3 are

apparent on their face.  They are there to assure that the Surety is advised in advance of a

potential default so that it can investigate before any changes take place and take appropriate

action, if necessary.  The requirements are further designed to specifically provide for a meeting

among the Owner, Principal, and Surety in an effort to work out a resolution in advance of a

default being declared.  Moreover, these requirements permit the Surety to lay the groundwork

for selection of its options for performance of its obligations set forth in Paragraph 4 of the bond,

if such becomes necessary.  Lastly, because the Surety is stepping in to ensure completion of the

performance, the Surety is given the benefit of all contract balances that remain unpaid.  CFP

admits that it frustrated all of these purposes and that it satisfied none of the requirements.

CFP puts forward the insupportable argument that, under the circumstances, it was

impossible for CFP to comply with all of the requirements of Paragraph 3.  It makes the

remarkable statement that Utica Mutual, even if provided the required notice and provided the

Contract Balance, would not be able to cure the default.  Rather, by ignoring the requirements of

Paragraph 3, CFP has made it impossible for Utica Mutual either to perform any timely

assessment or to perform its obligations as specified in the Performance Bond.  The chronology

makes this self evident.

CFP admits that by February 28, 2007 it had reason to believe that there may be a default

by Platinum in the making.  Yet no notification of any kind was given to Utica Mutual.  No

excuse is given for CFP's failure to notify Utica Mutual at that point.  There was no default as of

February 28, 2007, so it was both possible and necessary for CFP to give Utica Mutual pre-default notification at that time. Laying bare the disingenuous nature of CFP's position is the conveniently omitted fact that on March 6, 2007 CFP requested an extension of time to perform the contract from the Contracting Officer for the governmental Agencies, and on March 7, 2007 the request was accepted and the Contracting Officer and Roberto Clark of CFP executed a "Modification of Contract" extending the time for completion of the contract to March 30, 2007.[2] (Ryan Reply Aff. Exhibit I). Despite receiving the extension, CFP next advised Platinum that it was in default and barred Platinum from the job site on March 12, 2007.[3] (Ryan Reply Aff. Exhibit J). Yet, again, Utica Mutual received no notification of any kind. Instead, CFP skipped the pre-default notification, skipped the required request to arrange a conference among CFP, Platinum, and Utica Mutual, and moved ahead unilaterally to formal declaration of default, even though the completion date had already been extended. On March 19, 2007 CFP sent a letter to Platinum confirming the formal declaration of a default and allegedly sent a copy of that letter to a local agent of Utica Mutual, but not to Utica Mutual at its address for such notification as provided in the Performance Bond. On May 2, 2007 CFP's counsel sent a letter containing a formal declaration of default to Utica Mutual at its address for such notification. Whether one looks to the March 19, 2007 letter or the May 2, 2007 letter, neither is in compliance with Paragraph 3.2 of the Performance Bond, because either way the declaration of default was not made at least twenty days after pre-default notification as provided in Paragraph 3.1. No such pre-default notification was ever given to Utica Mutual by CFP.

---

[2] Curiously, the original completion date shown on the Modification of Contract is March 10, 2007 rather than March 12, 2007 as stated by CFP.
[3] It seems ludicrous from CFP to claim that Platinum "abandoned" the job site when in fact, it was CFP who barred Platinum from the job site.

In its opposition, CFP relies heavily upon the March 12, 2007 completion date as if it were carved in stone. Contract completion dates are frequently, if not routinely, extended. In fact, here, as clearly shown in Exhibit I, CFP had already asked for and received an extension of time for completion of the contract until March 30, 2007. Thus, accepting CFP's statement that it first knew that there might be a future default by the principal, Platinum Mechanical, LLC ("Platinum") on February 28, 2007, CFP had the time to send the appropriate pre-default notification, arrange the conference among Platinum, CFP, and Utica Mutual within fifteen days as required and, failing resolution, send a formal notification of default twenty days after the pre-default notification, all as expressly required. If the pre-default notification were provided on February 28, 2007, as it should have been provided, all of the Paragraph 3 notification requirements could have been accomplished by March 20, 2007, well in advance of the extended completion date. CFP's argument accordingly fails on its own stated facts. Indeed, even in the absence of the extension, CFP still was in a position to send the pre-default notification on February 28, 2007 and to request and attempt to arrange the conference among CFP, Utica Mutual, and Platinum prior to the original March 12, 2007 completion date heavily relied upon by CFP. Finally, CFP undeniably was in a position to pay the balance of the Contract Price to Utica Mutual as required by Paragraph 3.3, but chose instead to ignore this condition as well and kept the balance of the Contract Price for itself to pursue its own unilaterally determined course of remedy as stated in CFP's letter of March 12, 2007 to Platinum (Ryan Reply Aff. Exhibit J).

CFP's assertion that Utica Mutual would only have available the option provided by Paragraph 4.4 if CFP provided the requisite pre-default notification also makes no sense. Utica Mutual's options as set forth in Paragraph 4 are in no way limited to actions that might "cure" a default as CFP seems to imply. Rather, the options are prescribed methods by which Utica

Mutual can carry out its obligations under the Performance Bond after the notification and other requirements of Paragraph 3 have been fulfilled and the efforts to resolve the situation as prescribed in Paragraph 3 have been given a chance.  Thus, even under the undeniably false timeline laid out by CFP in its opposition papers, Utica Mutual still would be in a position to exercise any of the options in Paragraph 4 if CFP had satisfied the Paragraph 3 conditions.  It is only by reason of CFP's blatant breach of the Paragraph 3 conditions that Utica Mutual was deprived of all options under Paragraph 4.  Utica Mutual therefore suffered severe prejudice by reason of CFP's breach.

The absurdity of the proposition laid out by CFP is made clear by the very remedy that CFP seeks in its counterclaim.  CFP alleges in its counterclaim that it "incurred additional expenses to correct the faulty work performed by Platinum and to finish the work Platinum failed to complete."  CFP thus undertook to complete and correct the work allegedly either not completed or completed incorrectly by Platinum.[4]  CFP therefore substituted itself in the role that the Surety should have played, assuming there really were any faulty or incomplete work.  By doing so, CFP appointed itself the sole arbiter, unilaterally made all decisions concerning the nature and extent of any shortfalls in Platinum's work and the remedy to be undertaken, and thereby clearly and unequivocally denied Utica Mutual the rights and options specifically provided to Utica Mutual in the Performance Bond.  CFP now seeks after the fact reimbursement for expenses it incurred by reasons of its unilateral actions in total breach of the provisions of the Performance Bond.  Because of its breach, CFP is not entitled to the benefit of the Performance Bond.  Summary judgment in favor of Utica Mutual therefore is warranted.

---

[4] None of the alleged shortfalls in Platinum's work is conceded by Utica Mutual.

## POINT II

### CFP'S ARGUMENTS TO AVOID THE PLAIN MEANING OF THE PERFORMANCE BOND PROVISIONS LACK ANY MERIT

A bond is a contract which governs a surety's liability to an obligee and like all contracts it is to be construed in accordance with the standard principles of contract interpretation. United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 51 (2d Cir. 2004); Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC et al., 376 F.3d 96, 100 (2d Cir. 2004); Nobel Ins. Co. v. City of New York, 00-CV-1328 (KMK), 2006 U.S. Dist. LEXIS 70816, at *31 (S.D.N.Y. Sept. 29, 2006).

When interpreting a written contract the words in the contract must be given their plain and ordinary meaning. 120 Greenwich Dev. Assoc. LLC v. Reliance Ins. Co., 01 Civ. 8219 (PKL), 2004 U.S. Dist. LEXIS 10514, at *31 (S.D.N.Y. June 7, 2004) ("words and phrases are given their plain meaning"); Karash v. Riverside Sav. & Loan Asso., No. CV 88-1429, 1989 U.S. Dist. LEXIS 597, at *5 (E.D.N.Y. Jan. 4, 1989) ("the plain and unambiguous meaning of the language employed should be given effect.").

Moreover, in determining the scope of a surety's obligation, courts are careful to limit the surety's liability to the express terms of the contract. 120 Greenwich, 2004 U.S. Dist. LEXIS 10514, at *31-32 (S.D.N.Y. June 7, 2004) ("[t]he liability of a surety, however, cannot be extended beyond the plain and explicit language of the bond."); General Auth. for Supply Commodities v. Ins. Co. of N. Am., 951 F. Supp. 1097, 1109 (S.D.N.Y. 1997); Mendel-Mesick-Cohen-Architects v. Peerless Ins. Co., 426 N.Y.S.2d 124, 126 (3d Dept. 1980); Mid-State Precast Sys. Inc. v. Corbetta Constr. Co. Inc., 608 N.Y.S.2d 546, 550 (3d Dept. 1994); Testamentum v. Mitchell, No. 88 Civ. 5300 (PKL), 1990 U.S. Dist. LEXIS 932, at *3-4 (S.D.N.Y. Jan. 31, 1990); Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2nd Cir. 2000) ("[a] court may neither rewrite,

under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case").

In addition, a dispute between the contracting parties as to the meaning of the surety contract does not itself make the contract ambiguous. General Auth., 951 F. Supp. 1097, 1108 (S.D.N.Y. 1997); Metro. Life Ins. Co. et al v. RJR Nabisco Inc., 906 F.2d 884, 889 (2nd Cir. 1990) ("[t]he court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning."); Hunt Ltd. v. Lifschultz Fast Freight Inc., 889 F.2d 1274, 1277 (2nd Cir. 1989) ("[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations").

Paragraph 3 of the Performance Bond states "the *Surety's obligation under this Bond shall arise after."* The words "shall arise after" indicate that the Surety's obligations are triggered 'after' the Owner fulfills his obligations as set forth in Paragraph 3.1-3.3. Paragraph 3.1 provides that the Owner (CFP) must notify the Surety (Utica Mutual) "*at its address described in Paragraph 10 below"* of the Performance Bond "that the Owner is *considering declaring a Contractor Default* and *has requested and attempted to arrange a conference with the Contractor and the Surety* to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract."

The word 'consider' as defined by the WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 279 MERRIAM WEBSTER INC. (1989) means to "contemplate" or "to think of esp. with regard to taking some action" therefore CFP was required to notify Utica Mutual that it was *"considering [contemplating] declaring a Contractor Default"*. CFP did not follow the notice requirements of

Paragraph 3.1; instead, CFP attempted to skip ahead and execute part of the notice requirements of Paragraph 3.2 by *"declar[ing] a Contractor Default and formally terminat[ing] the Contractor's right to complete the contract,"* but failed here as well, because such default cannot be "declared earlier than twenty days after Contractor and Surety have received notice as provided in Subparagraph 3.1." If the terms of the Performance Bond are given their plain and ordinary meaning it is clear that CFP had to comply with all of Paragraph 3 including each of subparagraphs 3.1-3.3 in order for Utica Mutual's obligations to be invoked.  In fact, CFP complied with none of the subparagraphs.

The sole case relied upon by CFP to support its argument that in the face of the clear and unambiguous notification requirements of this Performance Bond, CFP somehow was only required to give "reasonable notice" to Utica Mutual is Town of Clarkstown v. North River Ins. Co., 803 F.Supp. 827 (S.D.N.Y. 1992).  CFP's reliance on that case is wholly misplaced.  In Clarkstown the court expressly noted that the performance bond in that case "is silent as to notice." Id. at 829.  Even there, in the total absence of any notice provision the court held that a requirement for reasonable notice is implied.  In the case at bar, unlike Clarkstown, there are explicit notice requirements.

Cam-Ful Industries, Inc. v. Fidelity and Deposit Company of Maryland, 922 F2d 156 (2d Cir. 1991) likewise is inapplicable.  Cam-Ful involved a payment bond, rather than a performance bond, and the issue in that case was an alleged change in the underlying contract. Utica Mutual has not raised on this motion that the bond is void because of a change in the underlying contract.  Rather, Utica Mutual relies upon breach by CFP of conditions in the Performance Bond itself.

By contrast, there are several cases which construe the provisions of Paragraph 3 of an AIA 312 Performance Bond, exactly like the one at issue here, as creating conditions precedent to invoking the surety's obligations under the performance bond. United States Fid., 369 F.3d 34, 41 (2d Cir. 2004); Walter Concrete, 758 N.Y.S. 2d 260, 261 (Ct. App. 2003); 120 Greenwich, 2004 U.S. Dist. LEXIS 10514, at *34-37 (S.D.N.Y. June 7, 2004); Seaboard Surety Co. v. Town of Greenfield, 370 F.3d 215, 216 (1st Cir. 2004); Enterprise Capital, 284 F.Supp.2d 166, 179-181 (D. Mass. 2003); Bank of Brewton Inc. v. Int'l Fid. Ins. Co., 827 So. 2d 747, 753 (Ala. 2002). By reason of CFP's failure to satisfy any of the conditions precedent, Utica Mutual has no obligation to CFP and summary judgment in Utica Mutual's favor is warranted.

## CONCLUSION

In its opposition papers, CFP admits its breach of every condition precedent set forth in Paragraph 3 of the Performance Bond.  Its effort to excuse this blatant breach founded upon a completion date for the contract that CFP knows was extended fails as a matter of law. Accordingly, under the undisputed facts presented on this motion, summary judgment in favor of Utica Mutual is warranted.

Dated: New York, New York
        November 14, 2007

                    Respectfully submitted,

                    MOUND COTTON WOLLAN & GREENGRASS

                    By: _John Mezzacappa_
                    John Mezzacappa (JM-1266)
                    Attorneys for Additional Defendant on the Counterclaim
                    Utica Mutual Insurance Co.
                    One Battery Park Plaza
                    New York, New York 10004
                    (212) 804-4200

- 10 -

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK   )

TONI M. COCUZZO, being duly sworn, deposes and says:

That deponent is not a party to this action, is over the age of 18 years and located in New York, New York.

That on November 14, 2007, deponent served the within **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ADDITIONAL DEFENDANT ON THE COUNTERCLAIM UTICA MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** upon:

> Thomas G. De Luca (TDL 6312)
> Attorneys for Defendant - Counterclaimant
> CFP Group, Inc.
> 11 Commerce Drive
> Cranford, New Jersey 07016
>
>         -and-
>
> Lori Vaughn Ebersohl
> LORI VAUGHN EBERSOHL, PLLC
> 252 North Washington Street
> Falls Church, VA 2204
>
> Paul G. Ryan (PR-2374)
> WELBY, BRADY & GREENBLATT, LLP
> Attorneys for Plaintiff
> Platinum Mechanical, LLC
> 11 Matrine Avenue
> White Plains, New York 10606

at the address designated by said attorney and/or party for that purpose, by depositing the same, enclosed in a postpaid, properly addressed envelope directed to said persons at the above address, in an official depository under the exclusive care and custody of United States Post Office.

TONI M. COCUZZO

Sworn to before me on
November 14, 2007

Notary Public

CHRISTINE E. ALEJO
Notary Public, State of New York
No. 01AL6092525
Qualified in New York County
Commission Expires May 19, 20 //